**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | |
|---|---|
| **THOMAS L. McMILLAN,** § § § | |
| **Plaintiff,** § § | |
| vs. § § § | Civil Action No. 6:06-CV-053-C<br>ECF<br>Referred to the U.S. Magistrate Judge |
| **MICHAEL J. ASTRUE[1],** § **Commissioner of Social Security,** § § | |
| **Defendant.** § | |

## REPORT AND RECOMMENDATION

**THIS CASE** is before the court upon Plaintiff's complaint filed April 27, 2006, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of his complaint on September 1, 2006, Defendant filed a brief on September 22, 2006, and Plaintiff filed his reply on October 6, 2006. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

---

[1] Michael J. Astrue has been appointed as the new Commissioner of Social Security, effective February 12, 2007, and is therefore substituted as Defendant in this matter for Jo Anne B. Barnhart, per FED. R. CIV. P. 25(d)(1).

## I. STATEMENT OF THE CASE

Plaintiff filed an application for disability insurance benefits on July 1, 2003, alleging disability beginning June 15, 1995. Tr. 13, 68-70. Plaintiff's application was denied initially and upon reconsideration. Tr. 29-32, 38-42. Plaintiff filed a Request for Hearing by Administrative Law Judge on March 17, 2004, and this case came for hearing before the Administrative Law Judge ("ALJ") on May 9, 2005. Tr. 13, 27-28, 602-39. Plaintiff, represented by his wife, a non-attorney, testified in his own behalf. Tr. 13, 611-18, 623-27. Two witnesses, Plaintiff's wife, Murselle McMillan, and stepson, Nathan David Reagor, also testified. Tr. 615, 618-23, 627-29. Dr. George Weilepp, a medical expert ("ME"), and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 630-39. The ALJ issued a decision unfavorable to Plaintiff on June 21, 2005. Tr. 10-19.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements on June 15, 1995, through December 31, 2000, and Plaintiff had not engaged in substantial gainful activity at any time since June 15, 2000. Tr. 14. Plaintiff has "severe" impairments, including status post bilateral carpal tunnel releases and status post right (dominant) shoulder arthroscopy, tendonitis and degenerative changes in the right ankle, remote history of coronary artery disease status post angioplasty, mild degenerative joint disease in his bilateral hips, hypertension, degenerative changes in the lumbosacral spine, and obesity. *Id*. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 17.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 16.

The ALJ found that Plaintiff, as of and prior to December 31, 2000, retained the RFC to perform a limited range of light work activity, limited by the need to avoid more than occasional overhead work with his right (dominant) upper extremity and by the need to avoid constant repetitive motions with his bilateral hands or wrists. Tr. 18. He also found that Plaintiff's past relevant work as a convenience store clerk did not require the performance of work-related activities precluded by these limitations. *Id.* Asked if a hypothetical individual with the above limitations could perform Plaintiff's past relevant work, the VE testified that an individual could perform the Plaintiff's relevant work as a convenience store clerk. The ALJ found that Plaintiff could return to his past relevant work as a convenience store clerk. Tr. 13. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 19.

Plaintiff submitted a Request for Review of Hearing Decision/Order on March 29, 2004. Tr. 5. On request of review, the Appeals Council denied Plaintiff's request and issued its opinion on March 2, 2006, indicating that although it had considered the contentions raised, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 5-9. The ALJ's decision, therefore, became the final decision of the Commissioner.

On April 27, 2006, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 4 that Plaintiff was not disabled because he could return to his past relevant work as a convenience store clerk. Tr. 19.

## III. DISCUSSION

Plaintiff claims that the ALJ's decision was not supported by substantial evidence in the record and that the ALJ erred in finding that Plaintiff's mental impairment was not "severe" at step 2 of the sequential evaluation process. Plaintiff further alleges that the ALJ erred by failing to give appropriate weight to the opinion of the ME, by failing to apply appropriate legal standards in making his RFC assessment, by failing to make a function-by-function determination of the frequency and duration of the need to alternate sitting and standing, and by failing to adequately consider the limitations imposed by Plaintiff's severe physical impairments. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.     Whether the ALJ erred in finding that Plaintiff's mental impairment was not "severe."**

Plaintiff argues that the ALJ erred by finding at step 2 that his mental impairment was not "severe." Plaintiff argues that the ALJ failed to appropriately consider evidence in the record indicating Plaintiff's difficulties as a result of his mental impairment and a statement by Dr. Art Allen that Plaintiff was not physically or psychologically healthy enough to maintain full-time employment.

Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987).

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert*. In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Id.* at 1101 (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). In *Loza v. Apfel*, the Court held that the standard set forth in *Stone* remained the correct standard. *Loza,* 219 F.3d at 392. However, the Commissioner may require a claimant to make a *de minimis* showing that his or her impairment is severe enough to interfere with the ability to do work under this standard. *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992).

The Court in *Stone* specifically required that ALJs and Appeals Councils must set forth the correct standard in their decisions by reference to the *Stone* opinion or to another opinion of the same effect or by including an express statement in the decision that the construction given to the severity regulation is the construction given to it in *Stone*. Failure to do so will result in the court's assumption that the ALJ or Appeals Council has applied an incorrect standard. *Stone,* 752 F.2d at 1106. Moreover, the claimant need only make a *de minimis* showing that his impairment is severe enough to interfere with his ability to do work to satisfy this standard. *Anthony*, 954 F.2d at 294.

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R.§§ 404.1520a, 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "b" criteria. A five-point scale is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 404.1520a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)). The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding as to the degree of limitation in each of the functional areas described. 20 C.F.R. §404.1520a(e)(2). The Psychiatric Review Technique form ("PRTF") represents one way in which such findings may be documented. 20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00-12.09. 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. *Boyd*, 239 F.3d at 705.

In this case the ALJ found that Plaintiff did not have a "severe" mental impairment. Tr. 17. In so finding, he noted that Dr. David Mercer treated Plaintiff from 1996 until 1998 for major

depression. Tr. 15. He noted that Dr. Mercer's progress notes indicate that Plaintiff did well on Zoloft overall and that as of their last session in May 1998, Plaintiff was doing well. Tr. 17. The ALJ noted that Plaintiff continued to take Zoloft, the medical evidence indicated that Plaintiff was doing well, and his depression was stable as of February 1999. Tr. 18. The ALJ also noted that there is no evidence of psychiatric treatment after 1998, nor is there evidence of significant complaints secondary to mental illness. *Id*.

The ALJ also noted Plaintiff's history of treatment by Ms. Coy Pullara, LCSW, who treated Plaintiff in 1996 and 1998. Tr. 15. The ALJ also discussed the testimony of Plaintiff and his wife and stepson about his mental impairments and the limitations imposed. Tr. 16-17.

Under the part "b" criteria, the ALJ found that for the period through December 31, 2000, there was no evidence that Plaintiff's mental impairments resulted in more than mild restrictions in his activities of daily living; created more than mild difficulties in maintaining social functioning; created no more than mild deficiencies in maintaining concentration, persistence, and pace; and had caused no episodes of decompensation of extended duration. *See* Tr. 18. The ALJ thus found that Plaintiff's mental impairment was not "severe."

Plaintiff argues that the ALJ failed to appropriately consider the evidence of Ms. Pullara, who indicated that during his course of therapy from January 1996 through July 1996 and from January 1998 through December 1999, Plaintiff presented with various problems and a diagnosis of severe depression, anxiety, and post-traumatic stress disorder (PTSD). However, the ALJ specifically discussed this piece of evidence in making his severity determination. The ALJ correctly noted that therapy with Ms. Pullar ended in 1999 and that other medical evidence indicated that Plaintiff was being treated with Zoloft, he was doing well, his depression was stable in 1999, and he sought no further mental health treatment.

Plaintiff argues that the ALJ erred by failing to appropriately consider the letter from Dr. Allen, a pastor from Plaintiff's church, indicating that Plaintiff was not physically or psychologically healthy enough to maintain full time employment. The record indicates that Dr. Allen indicated in his letter that he was writing as the pastor of Plaintiff's church and that it was his opinion that Plaintiff "has been unable to fulfill the tasks required for competent full-time employment for the previous five years" because he has not been healthy enough "both physically and psychologically." Tr. 86. Plaintiff indicates that Dr. Allen is his "pastor and counselor." Tr. 82. Even if the opinion had been made by a treating physician, whose well-supported opinion is generally accorded great weight, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)). Dr. Allen's opinion that Plaintiff was unable to perform the tasks required for full-time employment is thus not entitled to any special significance. The ALJ did not err by failing to appropriately consider this statement.

Plaintiff also argues that the ALJ failed to consider the letter his wife wrote. The record demonstrates that the ALJ considered the testimony of Plaintiff's wife regarding the limitations imposed by Plaintiff's mental impairment, as well as Plaintiff's own subjective allegations and the testimony of his stepson.

The record further demonstrates that the ALJ considered the opinions and progress notes of Dr. Mercer, a treatment provider, who indicated that Plaintiff was looking good on May 1, 1998. Tr. 148. Plaintiff's family practice provider indicated in his progress note dated March 1, 1999, that Plaintiff's depression was stable. Tr. 298. An October 25, 2001, progress note indicates that Plaintiff's report that his depression is well-controlled on Zoloft. Tr. 242.

The ALJ's severity determination at step 2, finding that Plaintiff did not have a "severe" mental impairment, is supported by substantial evidence in the record. The ALJ appropriately considered and evaluated the evidence regarding Plaintiff's mental impairment in making his severity finding. I find that the ALJ did not err in evaluating the severity of Plaintiff's mental impairment, nor did he err by failing to appropriately weigh and consider the evidence in the record concerning this impairment.

**B.      Whether the ALJ erred in making his RFC assessment.**

Plaintiff argues that the ALJ erred in making his RFC assessment in several respects. First, he argues that the ALJ erred by failing to give appropriate weight to the opinion of Dr. Weilepp, the ME. Second, he argues that the RFC determination is not supported by substantial evidence and was not made by applying the appropriate legal standards insofar as the ALJ failed to make a function-by-function assessment of his capacity to perform work activity and insofar as the ALJ failed to consider evidence of his 1966 gunshot wound, tendonitis and the talar dome defect in the right ankle, DJD in the bilateral hips, and lumbar DDD in formulating his RFC assessment.

        **1.      Whether the ALJ erred by failing to appropriately weigh and consider the opinion of the ME.**

A "medical advisor" is a neutral consultant who, at the request of the Social Security Administration, reviews a claimant's medical records, explains or clarifies information reflected therein, and expresses expert opinions as to the nature and severity of impairments and whether such impairments equal the criteria of any impairment in the Listing of Impairments. 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.912(b)(6), 416.927(f)(2)(iii). When a medical professional functions as an expert witness in the course of an evidentiary hearing before an ALJ, Social Security Ruling 96-6p designates the medical professional as a "medical expert." Social Security Ruling 96-6p

(July 2, 1996) ("SR 96-6p"). Clearly, an ALJ may rely upon testimony of an ME when evaluating the nature and extent of a claimant's impairments. *Richardson v. Perales,* 402 U.S. 389, 408 (1971).

However, the ALJ is not required to accept the testimony of the ME. Such testimony is treated as evidence from a non-examining source, which is weighed as described in 20 C.F.R. § 404.1527(a)-(e). "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

In this case the ALJ noted the testimony of Dr. Weilepp. He indicated that he found many of Dr. Weilepp's limitations were not supported by the evidence. Tr. 17. Dr. Weilepp had opined that Plaintiff was limited to light work, could sit 90 to 120 minutes, stand/walk 60 to 90 minutes for a total of four hours walking and six hours standing in an 8-hour workday, could sit/stand 60 to 90 minutes, could not work at heights or on ladders, could not work in extreme heat or cold or on irregular terrain, could not engage in fine motor fingering of a highly repetitive nature bilaterally, and could not engage in frequent overhead work with the right shoulder, although Plaintiff could do so occasionally. Tr. 17, 631-33.

Plaintiff argues that it is not clear from the ALJ's opinion why he did not accept all of Dr. Weilepp's testimony as to the limitations imposed by Plaintiff's impairments. In noting that he had found many of Dr. Weilepp's limitations were not supported, the ALJ referred to the foregoing evidence. Tr. 17. Before making the statement, the ALJ had indicated that Plaintiff's carpal tunnel symptoms had resolved post-surgery, that there was no medical evidence indicating that Plaintiff had experienced any myocardial infarctions during the relevant period, that Plaintiff reported in February 1999 that he had not taken nitroglycerine for several years because he had no chest pain, that his August 2000 chest pain appeared to be noncardiac, and that the cardiac catheterization of September 2000 failed to show any evidence of coronary artery disease. *Id.* The ALJ indicated that

he had not accepted Dr. Weilepp's testimony entirely regarding the limitations imposed by Plaintiff's impairments because of the identified medical evidence. I find that the ALJ did not err in evaluating the testimony of the ME.

> **2. Whether the ALJ erred by failing to make a function-by-function assessment of Plaintiff's ability to perform work activity.**

Plaintiff argues that in making his RFC assessment, the ALJ applied incorrect legal standards and failed to make a function-by-function assessment of his ability to perform the exertional requirements of light work activity. Plaintiff argues that the ALJ failed to address the concerns of SSR 96-8p and SSR 96-9p in determining Plaintiff's RFC, specifically his ability to perform all of the strength demands of light work.

The record demonstrates that the ALJ found that Plaintiff retained the RFC to perform a range of light work, limited by the need to avoid more than occasional overhead work with his right (dominant) upper extremity and by the need to avoid constant repetitive motions with his bilateral hands or wrists. Tr. 18. The ALJ found that Plaintiff was otherwise able to perform the full range of light work. Tr. 18-19.

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations

imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

SSR 96-8p. This ruling further provides that exertional capacity involves seven strength demands and that each function must be considered separately. The ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. Social Security Ruling 96-9p provides that the RFC assessment is a function-by-function assessment.

The regulations further provide:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(a).

The ALJ found that Plaintiff could perform such work, subject to the noted non-exertional limitations. He noted that he had considered the evaluations of the state agency physicians, but had not accorded any weight to the findings of such physicians because they did not have sufficient evidence prior to the last date insured to make a disability determination. Tr. 14-15.

Plaintiff correctly notes that the ALJ did not specifically address all of the seven strength demands identified in SSR 96-8p. The court notes that the ALJ found a specific limitation on

Plaintiff's use of the right (dominant) upper extremity to work above shoulder level and the bilateral use of his hands or wrists for repetitive motion. The ALJ did not address Plaintiff's ability to stand, walk, lift, carry, push, and pull. It is apparent in this case that the ALJ failed to appropriately make a function-by-function assessment with regard to Plaintiff's RFC by failing to specifically address Plaintiff's ability to perform these seven strength demands. The ALJ also did not rely upon any function-by-function assessment by the State agency medical consultants ("SAMCs"). However, if the ALJ violated SSR 96-8p by failing to make a function-by-function assessment, a remand is not necessarily required.

Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." 20 C.F.R. § 422.408 (1980); *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981) (*per curiam*). An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Newton*, 209 F.3d at 459. Should the agency violate its internal rules and prejudice results, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119. However, rulings lack force of law and are not binding on courts. *Id.* Thus, the ALJ's violation of SSR 96-8p does not *ipso facto* mean that the Commissioner's decision must be reversed; rather, the claimant must demonstrate that he was prejudiced by the error. *Id.* The appropriate question is thus whether such failure is prejudicial.

A harmless error analysis applies to administrative failure to comply with a regulation. *See Frank*, 326 F.3d at 622. Violation of a social security ruling merits remand only when a claimant affirmatively demonstrates prejudice. *Hall*, 660 F.2d at 119. The two concepts are closely related. Prejudice is established by showing that additional evidence could have been produced and "that the additional evidence might have led to a different decision." *Newton*, 209 F.3d at 458. An error is

harmless unless there is reason to think that a remand might lead to a different result. *Fisher,* 869 F.2d at 1057. Improprieties noted by Plaintiff will constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Here, the ALJ did not find that Plaintiff was limited in his ability to perform the seven exertional requirements of light work activity, although he did specify certain other limitations. Given that the ALJ found no such limitations, his failure to make a function-by-function assessment is not prejudicial in this case.

The record demonstrates that the ALJ consulted a VE to determine whether there existed a significant number of jobs in the national economy that a person of Plaintiff's age, vocational and educational history, and RFC could perform. A VE is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a VE "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, educational background, and past work experience, with the RFC for a full range of light work, except that he could work overhead no more than occasionally with his right (dominant) upper extremity and could not perform constant repetitive motions with his bilateral hands or wrists. Tr. 19. Here, the VE testified that there were jobs that such a person could perform, specifically, Plaintiff's past relevant work as a convenience store clerk, and the ALJ relied upon such testimony in making his step 4 finding. Tr. 19.

As the Plaintiff correctly notes, at the time of the hearing the ALJ posed hypothetical questions to the VE which included other limitations, which the ALJ did not ultimately accept or incorporate into his RFC finding. However, the ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris*, 864 F.2d at 336. The ALJ appropriately relied upon the testimony of the VE in determining that Plaintiff could perform the requirements of his past relevant work as a store clerk. While the ALJ may have erred by failing to make a function-by-function assessment of Plaintiff's ability to perform the exertional requirements of light work, such error is not prejudicial, given his finding that Plaintiff did not have any limitations, beyond those noted, on his ability to perform a range of light work activity and given the testimony of the VE, indicating that a person with Plaintiff's RFC could perform his past relevant work as a store clerk.

3.  **Whether the ALJ erred by failing to discuss specific items in the medical record**.

Plaintiff argues that the ALJ erred by failing to "specifically mention[ ] the talar dome defect" and failing to discuss his 1966 gunshot wound to the left elbow. Plaintiff argues that the medical evidence "supports a finding which would include a much more extensive right shoulder surgery." Pl. Brief at 16.

The record demonstrates that the ALJ found that Plaintiff had a "severe" combination of impairments, including status post bilateral carpal tunnel releases and status post right (dominant) arthroscopy, tendonitis, degenerative changes in the right ankle, a remote history of coronary artery disease status post angioplasty, mild degenerative joint disease in his bilateral hips, hyptertension, degenerative changes in the lumbosacral spine, and obesity. Tr. 14.

As Plaintiff correctly notes, in his severity finding the ALJ noted Plaintiff's history of bilateral carpal tunnel releases, his right shoulder surgery, the tendonitis and degenerative changes in the right ankle, mild degenerative joint disease in both hips, bilateral changes in the lumbosactral

spine, and obesity. Pl. Brief at 18. The ALJ specifically discussed Planitiff's hypertension, degenerative joint disease in both hips (more pronounced on the left), and his degenerative disk changes from L3 to S1. Tr. 15. He noted the recommendation that Plaintiff obtain a second opinion regarding ankle surgery, as well as Plaintiff's pain related to his tendonitis and the degenerative changes in his right ankle. *Id*. He noted Plaintiff's nerve conduction studies and his treatment, including surgery, and resolution of symptoms for his moderate to severe left carpal tunnel syndrome and extremely severe right carpal tunnel syndrome. *Id*. The ALJ noted that Plaintiff experienced right shoulder pain, a torn rotator cuff, impingement syndrome, and torn tendons requiring surgery to repair the rotator cuff and tendons, debride the shoulder, and resect the distal clavicle. He also noted that the surgery alleviated some of Plaintiff's pain, but did not restore full function. Tr. 15. In his opinion the ALJ also noted Plaintiff's testimony regarding severe problems with his hips, back, ankles, and shoulders. Tr. 16.

In making his RFC finding, the ALJ noted that Plaintiff's carpal tunnel syndrome resolved post-surgery, he was unable to regain full function of his shoulder, and he has tendonitis in his right ankle that "may have required surgery." Tr. 17. The ALJ noted that Plaintiff had only mild degeneration in his hips and that although there was evidence of degeneration in his lumbosacral spine, there was little evidence of complaints of back pain or treatment for this impairment after 1999. *Id*. The ALJ noted that he had considered this combination of impairments in making his RFC assessment and limiting Plaintiff to a limited range of light work. *Id*.

Plaintiff notes that there is additional evidence in the record regarding Plaintiff's hips. Plaintiff argues that the ALJ "tried to minimize the claimant's long-standing hip pain and lumbar degenerative disc disease." Pl. Brief at 20. The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986). Here, the record

demonstrates that the ALJ appropriately considered these impairments in making his RFC determination.

Plaintiff correctly notes that the ALJ did not discuss the 1966 gunshot wound. The ALJ is not required, however, to specifically discuss all of the evidence that supports his decision or that was rejected. *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994). The record demonstrates that Plaintiff last engaged in substantial gainful activity after 1966. Indeed, Plaintiff's alleged onset date of disability was June 15, 1995. Tr. 14. Although the ALJ may not have discussed this wound, the ALJ was not required to discuss every piece of medical evidence in the Plaintiff's extensive record. The ALJ ultimately found that Plaintiff retained the RFC for a limited range of light work. It is, of course, the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion. *See* 20 C.F.R. §§ 416.946, 416.927(e). The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion. Plaintiff argues that while he was in the military, he was given a 10-pound lifting restriction. The record to which Plaintiff points is a May 22, 1981, unsigned Physical Profile Board Proceedings form indicating "No assignment requiring handling of heavy materials including weapons (except individual weapon). No overhead work, no pullups or pushups. No lifting over 10 pounds with left arm." Tr. 589. Other than this isolated form, there is no medical evidence in the record indicating that during the relevant period, Plaintiff was limited to lifting over 10 pounds. The ALJ found that Plaintiff was able to perform the exertional requirements of a limited range of light work, which would generally include occasional lifting of up to 20 pounds and frequent lifting of up to 10 pounds. Plaintiff notes that the gunshot wound was considered in his VA disability rating. A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.

2001). The ALJ noted that he had considered the VA disability ratings and appropriately discussed them.

I find that the ALJ did not err by failing to discuss Plaintiff's 1966 gunshot wound, nor did he err by failing to discuss the notation in the record indicating that Planitiff was given a 10-pound lifting restriction by the military. The ALJ appropriately considered and discussed the record evidence as a whole in making his RFC assessment, and the RFC assessment and the ALJ's decision are supported by substantial evidence in the record.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1)and Rule 4(a) of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States

Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 27th day of August , 2007.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**